In the Matter of Richard L. SISSON, aka Richard Leroy Sisson and Orba Scharleen Sisson, Debtors.

The BELLBROOK COMMUNITY BANK, Plaintiff,

v.

Richard L. SISSON, et al., Defendants.

Bankruptcy No. 3–80–01244.
Adv. No. 3–80–0331.

United States Bankruptcy Court, S. D. Ohio, W. D.

Oct. 22, 1981.

Edward A. Lettus, Jr., Dayton, Ohio, for plaintiff.

Eugene A. Jablinski, Dayton, Ohio, Trustee.

James R. Geisenfeld, Englewood, Ohio, for debtors-defendants.

### DECISION

ELLIS W. KERR, Bankruptcy Judge.

### THE PLEADINGS

The Complaint prays for modification of Stay to permit foreclosure interests in a Cadillac and a savings account located at Western Ohio National Bank and Trust Company in Covington, Ohio, hereafter referred to as W.O. The Stay was lifted as to the Cadillac. Now in dispute is the savings

account assigned to W.O. by O. Scharleen Sisson, defendant-debtor, as security for a commercial loan. The amount is $30,000.00. (Exhibit D attached to Complaint.)

It is alleged debtors have no equity and if plaintiff is not permitted to foreclose it will suffer irreparable injury, loss, and damage.

No answers or other pleadings were filed. The trustee was not named as a defendant but was present at the July 10, 1980 preliminary hearing. Also present were the attorney for the plaintiff and the debtors and their attorney. At that hearing the matter of the Cadillac was settled but the trustee disputed the claim of the plaintiff as to the savings account. The trustee appeared at the final hearing and another pre-trial, submitted brief and plaintiff submitted a reply brief. The attorney for the plaintiff joined with the trustee in approving an April 27, 1981 Order pertaining to point of law at issue and briefs to be submitted. These comments are made at this place under the heading of "The Pleadings" in order to resolve any question as to trustee not having filed any pleading.

The Court finds that it is proper that the trustee intervene in this case; that he has a duty to do so; that this Court would have approved an Order making the trustee a party and authorizing him to proceed as he has if the question had ever been raised by the plaintiff which, having filed no objection, has waived any right to object now to the trustee contesting the claim of the plaintiff.

It should further be noted in regard to pleadings that not only was no pleading filed on behalf of the defendants but their attorney on August 25, 1981, filed in this case a letter stating no brief would be filed for the reason that the dispute was one between just the plaintiff and the trustee.

### FINDINGS OF FACTS

Both plaintiff and trustee submitted "Statement of Facts". These findings by the Court are based upon those statements and upon the testimony and evidence at the final hearing. There are inconsistencies and evidence at the final hearing. There are inconsistencies between the statements, and the statements and testimony and evidence.

The exhibits (all are plaintiff's) to which reference is hereafter made were admitted in evidence. (Copies were admitted in lieu of originals.)

On June 29, 1978, plaintiff made a $30,-000.00 loan to defendants. It was secured by a savings account in the name of defendant O. Scharleen Sisson, numbered 51-10185-3 in the amount of $30,000.00 established 6-28-78 as shown by loan accounts book (Ex. F).

O. Scharleen Sisson assigned this savings account to W. O. (Exhibit D). This assignment identified the account by two numbers: 51-10185-3 and 01-113999-24. It was not dated but the employee of the plaintiff who completed the paper work pertaining to the loan testified the assignment was signed the same day the loan was made which was actually 6-29-78 on which date the plaintiff's president sent a letter to W. O. as a follow up to phone conversation that same day that plaintiff was holding savings account 51-10185-3 as collateral against the $30,000.00 loan. (Exhibits E and G-1.)

The 6-29-78 loan was for one year, was not paid. The defendants were asked to come in and renew. They did.

On August 3, 1979, the defendants signed a $30,000.00 note payable to plaintiff. It was secured by "Royal Savings at Western Ohio National Bank—Assignment of Savings". (Exhibit B)

The original note was marked paid and returned to the Sissons.

The trustee places importance on the numbers given the account. At the final hearing there was such a dispute as to records that it was agreed the hearing be continued; that certain records be submitted to the trustee; that if not approved the hearing be re-set; that if there were no dispute the Court was to be informed if the matter were to be submitted on briefs. This led to another pre-trial on March 5,

1981, at which time it was agreed each party would submit a Statement of Facts and briefs would be submitted. This was done.

This case is fraught with confusion requiring inordinate time to prepare a decision. Because of the conclusions of law in this decision the following comments, although probably not necessary, are appropriate.

The plaintiff's statement of facts refers to a loan and note of June 29, 1979. The testimony and evidence indicate the year was 1978.

The burden of proof being on plaintiff its exhibits in some respects raise more questions than they solve.

The plaintiff never made clear when it was the account numbers were changed due to installation of a computer system.

McMasters of W. O. testified that the 51 series of numbers would have been proper in June 1978 when the original loan was made. If the signature card (Exhibit H) was signed when the account was established 6–28–78 (Exhibit F) why did the card contain the new number? The card is not dated. It contains an insertion in ink of the 6–28–78 date opened. It is obvious this card was prepared after the new numbering, whenever that was. The same applies to Exhibit I which is not dated. The only date on it is the 6–28–78 Opening date.

Exhibit J "Terms of Stop Payment Request" of W. O. contains new account number and has value only as it might verify the assignment if the 6/29/78 notation in ink had been made on that date. It also explains the next to last line entry on Exhibit K.

Exhibit K, being a report dated October 24, 1980, uses, of course, the new number and is pertinent only as to loan balances and charges and showing the 6–28–78 date the account was opened.

Frances Diegel for plaintiff testified she typed the Exhibit D assignment 6–29–78 but typed only the one account number on that date and added the second number "within a few days"; that W. O. did not send any acknowledgment of the assignment until May 2, 1980, and that after the August 3 note no letter was sent W. O. informing them of the new note.

On cross-examination McMaster of W. O. testified he was at the Troy branch when the Exhibit I application was filed; that it contained the new number but the next day the number was different on the "document at the other bank". But on direct he had testified he first became aware of the two account numbers on May 2, 1980. He also admitted that all the records he had brought to the hearing contained just the one account number. It was at this point it was agreed the hearing should be continued.

## CONCLUSION OF LAW

Ohio Revised Code Section 1309.04(K) provides that Sections 1309.01 to 1309.50 do not apply to a transfer of interest in any deposit account.

The security in dispute in this case is a deposit account. ORC 1309.01(A)(5).

Therefore, ORC Sections 1309.01 to 1309.-50 do not apply but general law as to contracts, assignments, and similar matters does apply.

At page 149 in 6 O.Jur.3d it is stated: "An assignment, according to the legal usage of the term, is a transfer or setting over of property, or of some right or interest therein, from one person to another. It is the act by which one person transfers to another, or causes to vest in another, his right of property or interest therein."

Plaintiff cites two cases: *Fosdick v. Barr*, 3 Ohio St. 471 and *Grant v. Administrator of Ludlow*, 8 Ohio St. 1. Both are old cases setting out general principles but facts are entirely different.

*Fosdick* involves the priority between an equitable assignment of property and the levy and sale by a judgment creditor of property.

(Held: ".... unrecorded instruments are good and effectual between the parties;

but entirely nugatory as to third parties, both at law and in equity, until they are recorded.")

*Grant* touched only slightly on the matter of assignments. It is primarily concerned with priority between an equitable mortgage and a legal one. It took 98 pages to do it!

The *form* of the instrument making the conveyance is not material. *Wambaugh v. Northwestern Mutual Ins. Co.*, 59 Ohio St. 228, 52 N.E. 839.

 The assignment of the interest in the savings account was a valid assignment and created a lien for the benefit of the plaintiff.

The change in the numbering of the account did not change the interest of the plaintiff. There was only one savings account in the name of the assignor. It was assigned to Western Ohio National Bank and Trust Co. and then pledged as collateral to secure the debt due the plaintiff—all valid transactions. There was no other transaction between or among these same parties. A mere letter or phone call would reveal the existence and status of the pledge. A reasonably prudent person would not be justified in making investigation by just an account number.

In recent years the cases indicate that the exactness once required no longer apply in describing property. It is best stated in the "Official Comment" pertaining to ORC 1309.08. Although this section is included in those sections made inapplicable to savings accounts it is a good statement as to the present tendency and is as follows:

"The test of sufficiency of a description is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test."

The important thing is ability to identify the property. The change in numbers of the account in dispute did not prevent proper identification.

We further conclude that the trustee had a statutory duty to intervene in this case (and should be commended for the fine job he did). The exhibits and our previous comments indicate the confusion and questions raised. The trustee had to make sure whether general creditors are entitled to the proceeds of this disputed account.

Decision must be in favor of the plaintiff. Separate judgment Order will be made as required by Rules of Bankruptcy Procedure.